FLORENCE T. NAKAKUNI      #2286
United States Attorney
District of Hawaii

MARK A. INCIONG   CA BAR #163443
Assistant U.S. Attorney
PJKK Federal Building, Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:    Mark.Inciong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

              IN THE UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00553 JMS |
| | ) | |
| Plaintiff, | ) | UNITED STATES OF AMERICA'S |
| | ) | MEMORANDUM IN OPPOSITION |
| vs. | ) | TO DEFENDANT'S MOTION FOR |
| | ) | NEW TRIAL & MOTION TO STRIKE; |
| JAMES TAGUPA,      (03) | ) | DECLARATIONS; EXHIBITS A - H; |
| | ) | CERTIFICATE OF SERVICE |
| Defendant. | ) | |
| | ) | |

TABLE OF CONTENTS

Table of Authorities............................................i

I.      Statement of Cases......................................1

II.     Summary of the Facts....................................2

III.    Points and Authorities..................................3

        A.      Motion to Strike................................3

        B.      No exculpatory statements were ever
                made regarding Defendant's lack of
                knowledge of the methamphetamine he
                possessed or his involvement in the
                drug conspiracy.................................5

                1.      The statements attributed to
                        Benjamin Fuller are inherently
                        unreliable as is Fuller as a
                        witness.................................6

        C.      There are no legal or factual grounds
                upon which to grant Defendant a new trial.......11

IV.     Conclusion.............................................15

TABLE OF AUTHORITIES

<u>Cases</u>                                                         <u>Page(s)</u>

<u>United States v. Diggs</u>, 649 F.2d 731
        (9th Cir.) ...........................................12


<u>United States v. Kohring</u>, 637 F.3d 895
        (9th Cir. 2011) .....................................12


<u>United States v. Kulczyk</u>, 931 F.2d 542
        (9th Cir. 1991) .....................................12


<u>United States v. Lopez</u>, 803 F.2d 969
        (9th Cir. 1986) .................................11, 12


<u>United States v. Mazzarella</u>, 2015 WL 1769677
        (9th Cir. April 20, 2015) ...........................12


<u>United States v. Wilkes</u>, 662 F.3d 524
        (9th Cir. 2011) .....................................12

<u>Rules</u>

Fed.R.Civ. P. 56(e) .........................................4

Local Rule of Practice for the District of Hawaii..............4

<u>Codes</u>

21 USC 841(a)(1).............................................1

21 USC 841(b)(1)(A)..........................................1

21 USC 846...................................................1

28 USC 1746..................................................4

**UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR NEW TRIAL & MOTION TO STRIKE**

COMES NOW the United States of America, by and through Florence T. Nakakuni, United States Attorney, and Mark A. Inciong, Assistant United States Attorney, and hereby files its response to Defendant's above-referenced motion.  Said response is based upon the files and records of this case together with the attached memorandum of points and authorities.

**I.**

**STATEMENT OF THE CASE**

On June 20, 2013, a First Superseding Indictment was filed in the District of Hawaii charging Defendant Tagupa with Conspiracy to Distribute and Possess, with Intent to Distribute, 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A); and possession, with intent to distribute, of 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

On December 10, 2014, jury trial commenced.  On December 18, 2014, the jury returned verdicts of guilty against the Defendant on both counts and further found that he conspired to distribute and possessed, with intent to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its

1

isomers.

## II.

## <u>SUMMARY OF THE FACTS</u>

As part of an investigation into alleged methamphetamine distribution by Molokai resident Jon Hans Kaapuni, Jr., the Maui Police Department and the Federal Bureau of Investigation arrested Beau Kikukawa and Celestino Lopez on Molokai for methamphetamine violations in 2011.  Lopez and Kikukawa agreed to cooperate with law enforcement and assist in the investigation into Kaapuni.

After multiple controlled purchases of methamphetamine were made from Kaapuni in 2011 and 2012, the FBI and Maui P.D. received authorization in August, 2012 to conduct a wiretap of Kaapuni's cellular phone.  Wire interceptions over that phone revealed a delivery of methamphetamine being arranged by Kaapuni on August 21, 2012.  Defendant James Tagupa was intercepted that same day talking with Kaapuni about placing and packaging an unnamed item inside a box containing a chainsaw which Tagupa had just purchased at the Maui Home Depot.

Maui Police observed Tagupa leaving Home Depot with the chainsaw box in his truck as well as the subsequent transfer of the chainsaw box from Tagupa's truck to a blue Toyota truck.

Tagupa was later intercepted telling Kaapuni he had successfully delivered the box to co-conspirator Keoni Duffy, stating, "I told Duffy where everything was.  And I said, do not

2

let this fuckin thing get out of your hands.  Just keep an eye on this.  Whatever you do, put this fuckin thing in the car, brah, if you guys go anywhere."

Shortly after, a traffic stop was made by Maui Police on the blue truck for a vehicle code violation.  After a search warrant was obtained for the truck, the chainsaw box, found within the bed of the blue truck, was opened and found to contain approximately 444 grams of methamphetamine.

After the seizure of the drugs, a flurry of telephone calls between Kaapuni, Tagupa and other co-conspirators ensued with Tagupa expressing disbelief the drugs had been seized and offering to drive to the location of the vehicle stop to find out what was happening. Tagupa was later intercepted discussing with Kaapuni whether he should join the Maui Police Department so the group would have "someone on da inside."

Analysis of the carton, tape and rubbish bag containing the methamphetamine all tested positive for Tagupa's fingerprints.

III

POINTS AND AUTHORITIES

A.  **Motion to Strike**

In his Motion for New Trial, Defendant makes outrageous, baseless and false allegations against the undersigned prosecutor and lead FBI Special Agent.  In support, counsel for Defendant lodges his own declaration swearing in

3

paragraph 11 of the affidavit that, "I was informed that Defendant Fuller and Defendant Kaapuni may have told the Government exculpatory information about Defendant Tagupa prior to his trial."  Page three of Defendant's Motion for New Trial contains a similarly vague reference, i.e., "counsel learned about Mr. Fuller's pretrial statement to the government. . ."  Clearly, the initial source of the "information" was not Benjamin Fuller.  Yet, nowhere in the Motion for New Trial or his declaration does defense counsel identify the unnamed source(s) of the "information."  That person, or persons, would seem to be an important witness to identify to this Court if the allegations were true.

The Defendant's Motion for New Trial also fails to include any affidavit or declaration, as required by Local Rule 7.6, from Benjamin Fuller or the unnamed source(s) who counsel for Defendant claims provided the very impetus for the filing of the Motion for New Trial.  Local Rule of Practice for the District Court of Hawaii 7.6 states:

> Factual contentions made in support of or in opposition to any motion shall be supported by affidavits or declarations.  Affidavits and declarations shall contain only facts, shall conform to the requirements of Fed. R. Civ. P. 56(e) and 28 U.S.C. Section 1746, and shall avoid conclusions and argument.[1]  Any statement made upon information or belief shall specify the basis therefor. Affidavits and declarations not in

---

[1]  Much of the declaration by counsel for Defendant should also be stricken as it is replete with conclusions and argument in violation of the Local Rules. Nor does the declaration specify the basis for which defense counsel initially "was informed" of Fuller's statements.  Finally, rather than limiting the declaration to his own assertions, defense counsel repeatedly attempts to attribute various beliefs and theories to the Government.

compliance with this rule may be disregarded by the Court. (Emphasis added.)

Because Defendant has failed to provide the requisite affidavits from Fuller or any witness who could testify to the statements attributed to Fuller, as alleged by Defendant, Defendant's Motion for New Trial should be struck and not considered by this Court.

**B.   No exculpatory statements were ever made regarding Defendant's lack of knowledge of the methamphetamine he possessed or his involvement in the drug conspiracy.**

Defendant, through his counsel, makes extremely Serious and false accusations against the Government alleging the withholding of exculpatory, or <u>Brady</u>, evidence, specifically statements attributed to Benjamin Fuller. As indicated previously, the United States respectfully requests that this Court strike Defendant's motion for failing to provide the required affidavits in support of the allegations. The United States submits that no such affidavits were attached because no one would truthfully swear to one as the allegations are false, libelous and would subject the affiant to prosecution for perjury.

If the Court should consider Defendant's motion, despite their failure to comply with the local rule, the affidavits of FBI Special Agent Joel D. Rudow and undersigned counsel (attached as Exhibits A and B) clearly demonstrate that none of the allegations made in Defendant's motion for new trial are true. The factual record laid out in the affidavits wholly

5

refutes and renders null and void the claims made by Defendant.

Accordingly, Defendant's Motion for New Trial should be summarily denied without any hearing.

### 1. The statements attributed to Benjamin Fuller are inherently unreliable as is Fuller as a witness.

If the Court believes further scrutiny is necessary, abundant evidence already exists in the record to reject any statements by Benjamin Fuller[2] as unreliable. Defendant's Motion for New Trial rests entirely on two e-mail replies from Fuller made in response to questions posed by counsel for Defendant who initiated the e-mail contact with Fuller. (Exhibit A to Defendant's Motion for New Trial.) Not only is the entire nature of the contact with Fuller suspect and unreliable, Fuller himself has repeatedly proven to be, and remains, an inherently dishonest witness.

As indicated previously, Defendant's motion neither includes an affidavit from Fuller or anyone else who supposedly "informed" defense counsel of the statements attributed to Fuller. The lack of any such declaration severely taints the reliability of the asserted statements. Additionally, rather than inquiring in an innocuous, objective or open-ended manner when initiating contact with Fuller via e-mail on April 15, 2015, counsel for Defendant spoon fed the answer he was seeking from Fuller in his "question", stating,

---

[2]   Fuller is currently in the custody of the Bureau of Prisons at FCC-Lompoc serving a 168-month sentence.

"I have heard that you may have told the agents during interviews that James did not have anything to do with all of this, and that he did not know and was not told what was in the bag in question.  I am trying to confirm if you told that to the agents prior to James' trial."  (Defendant's Exhibit A.)

Led by counsel for defendant's loaded question, Fuller was happy to "confirm" Tagupa was yet another individual not involved in the conspiracy as will be discussed further below. With all things considered, the statements attributed to Fuller reek of unreliability and should be rejected by this Court.

For Benjamin Fuller, there exists a long, documented and ongoing history of dishonesty and untrustworthiness:

(1)   Fuller is a multi-convicted felon.  In addition to the federal drug conspiracy for which he is currently serving prison time, Fuller owns prior state felony convictions beginning in 1998 for Robbery in the 2nd Degree (for which his probation was revoked), Reckless Endangering in the 2nd Degree, Terroristic Threatening in the 1st Degree, Carrying or Using a Firearm in the Commission of a Separate Felony and Place to Keep Firearms.  (See Fuller Presentence Report at pages 13-15.  Submitted separately for in camera review.)

(2)   In Fuller's plea agreement (Attached as Exhibit C.), entered on March 4, 2014 pursuant to his guilty plea to conspiracy to distribute and possess, with intent to distribute, 50 grams or more of methamphetamine in this criminal case, Fuller stipulated to the following

facts:

a.   Beginning at a date unknown, but no later than
November, 2010, and continuing up to and including May
29, 2013, Defendant BENJAMIN KAMUELA FULLER ("FULLER")
agreed with Jon Hans Kaapuni, Jr., aka "Hanzy boy"
("Kaapuni"), James Tagupa, Keoni Duffy, Celestino Lopez,
Beau Kikukawa, and others, to distribute and possess,
with intent to distribute, methamphetamine in the
District of Hawaii.  (Emphasis added.)(Exhibit C, page
4.)

b.   Throughout the course of the conspiracy, as described
below, FULLER knowingly furthered its objectives to
distribute and possess, with intent to distribute,
methamphetamine in Hawaii by obtaining pound quantities
of methamphetamine which FULLER, in turn, provided to
Kaapuni, James Tagupa ("Tagupa"), Beau Kikukawa
("Kikukawa") and others for further distribution within
the District of Hawaii. (Exhibit C, page 4.)

Thus, the statements attributed to Fuller in
Defendant's Motion for New Trial wholly contradict Fuller's sworn
testimony during his change of plea hearing where he admitted he
agreed with James Tagupa to distribute and possess, with intent
to distribute, methamphetamine.  Contrary to Defendant's Motion
for New Trial, which lacks any affidavit or declaration of truth,
Fuller was under oath when he swore to those facts in his plea

8

agreement in federal court on March 4, 2014.

    (3)   In his plea agreement, Fuller stipulated to a +4 level increase in his base offense level for his aggravated role in the offense pursuant to Guidelines Section 3B1.1. In order for a four level increase to apply, that section requires the defendant to have been an organizer or leader of five or more participants. USSG Section 3B1.1(a). The factual basis of Fuller's plea agreement, as discussed previously, and Fuller's Presentence Report (Page 12, paragraphs 46.) both identify Tagupa as one of those participants. (Exhibit C, page 7.)

    (4)   Fuller entered into a cooperation agreement with the Government on July 1, 2013 (Attached as Exhibit D.) and promptly violated the terms four days later by failing to provide complete information known to him regarding his drug source and refusing to cooperate against his co-conspirators as evidenced by the FBI report of investigation documenting the debriefing on July 5, 2013. (Submitted separately for in camera review.)

    (5)   Despite Fuller's lack of candor, on October 2, 2014 the Government filed a Section 5K motion on behalf of Fuller for information he did provide which was useful to the Government. (Submitted separately for in camera review.) However, the Government's motion specifically

9

informed the Court that, "FULLER declined to provide information as to Jon Hans Kaapuni and other members of the charged conspiracy or other individuals to whom he supplied methamphetamine on Maui."

(6) To this day, Fuller remains intent on protecting as many of his co-conspirators as possible as evidenced by his same day e-mail reply to counsel for Defendant on April 15, 2015, stating, ". . . if anything, the people that's not in the light, I will try to keep them out." (Defendant's Exhibit A.)  Clearly, Tagupa is just the latest co-conspirator Fuller has taken upon himself to try to "protect."

(7) On September 9, 2011, Fuller was stopped in his vehicle by Maui Police after it was believed Fuller had received a drug delivery earlier that same day.  Police recovered $38,000 in cash from Fuller's truck bundled in a manner consistent with drug trafficking.   When asked to explain the source of the money, Fuller stated it was his life savings and he wanted to "take his money for a ride." (Fuller PSR at page 7.)  In Fuller's plea agreement resolving this case, he agreed to forfeit that $38,000, via a money judgment to the United States, admitting the cash was proceeds from the same drug conspiracy to which he pled guilty. (Fuller Presentence Report at page 7.)  Fuller's statements to

police on September 9, 2011 are just another example of his untruthfulness.

Thus, the Government's affidavits attached to this response coupled with the highly suspect nature of Defendant's accusations and the inherent untrustworthiness of Benjamin Fuller warrant a summary denial of Defendant's Motion for New Trial without any hearing.

C. **THERE ARE NO LEGAL OR FACTUAL GROUNDS UPON WHICH TO GRANT DEFENDANT A NEW TRIAL.**

To prevail on a Rule 33 motion for a new trial, the movant must satisfy a five-part test:

(1) the evidence must be newly discovered;

(2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part[3];

(3) the evidence must be material to the issues at trial;

(4) the evidence must be neither cumulative nor merely impeaching; and

(5) the evidence must indicate that a new trial would probably result in acquittal.

United States v. Lopez, 803 F.2d 969, 977 (9th Cir. 1986), cert.

---

[3] Because the statements Defendant attributes to Fuller were never made, as evidenced by the Government's declarations, there cannot be a lack of due diligence in its classic form on the part of counsel for Defendant. However, given the defense theory attempted at trial, i.e., Tagupa had no knowledge the package he delivered on August 21, 2012 contained methamphetamine, and the fact that Fuller was sentenced nearly two months prior to the commencement of Tagupa's trial, it would certainly seem diligent for the defense to have spoken to Fuller and/or its other unnamed sources of this "information" prior to trial.  That way, the issue could have been resolved pretrial.  Waiting until six months after the trial has concluded reeks of sandbagging on the part of the defense.

denied, 481 U.S. 1030 (1987), <u>citing</u> <u>United States v. Diggs</u>, 649 F.2d 731, 739 (9th Cir.), cert. denied, 454 U.S. 970 (1981); <u>United States v. Kulczyk</u>, 931 F.2d 542, 548 (9th Cir. 1991).

Specifically in the spectrum of post-trial <u>Brady</u> violations, three components must be met:

(1) The information must be favorable to the defense;

(2) It must not have been disclosed by the government before or at trial; and,

(3) There must have been resulting prejudice. <u>United States v. Mazzarella</u>, 2015 WL 1769677 at *4 (9th Cir. April 20, 2015) <u>citing</u> <u>United States v. Wilkes</u>, 662 F.3d 524, 535 (9th Cir. 2011).[4]

Prejudice ensues "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. <u>Id</u>. <u>citing</u> <u>United States v. Kohring</u>, 637 F.3d 895, 902 (9th Cir. 2011.)

Defendant cannot meet any of these standards. As demonstrated above, no exculpatory evidence exists. Thus, none of the <u>Lopez</u> or <u>Mazzarella</u> prongs can be satisfied. Even if, assuming arguendo, Defendant's claims were true, the final prongs of those two tests still cannot be proven: the introduction of Fuller's statements at trial would not have resulted in any reasonable probability of Defendant being acquitted.

---

[4] <u>Mazzarella</u> involved post-trial <u>Brady</u> disclosures regarding three government cooperating witnesses who testified at trial. Here, Fuller was not a

The case against Tagupa was almost exclusively based upon Title III wire intercepts between Tagupa and Jon Hans Kaapuni, Jr. and Tagupa's actions in which great care was taken to conceal the package within the box of a chainsaw purchased just hours before. The two cooperating defendants who testified on behalf of the Government, Beau Kikukawa and Celestino Lopez, had no information regarding Tagupa's involvement in the conspiracy.  Rather, their testimony was introduced to establish the identity of other co-conspirators and the existence of the overall conspiracy of which Tagupa was a part.[5]  Tagupa's own words, not those of anyone else, were what convicted him.

Incredibly damning statements made by Tagupa in his own voice conversing with Kaapuni, a leader of the conspiracy, were played for the jury.  Part of what the jury heard from Tagupa was his boasting to Kaapuni how he had carefully warned co-conspirator Keoni Duffy how to handle the methamphetamine:

> "I told Duffy where everything was.  And I said, do not let this fuckin thing get out of your hands.  Just keep an eye on this.  Whatever you do, put this fuckin thing in the car, brah, if you guys go anywhere."

(Government's Trial Exhibit 1L1, page 4; attached as Exhibit E.)

Subsequent wire interceptions showed the first phone call Kaapuni made after Duffy informed him the methamphetamine

---

government witness at Defendant's trial.
[5]  It is ironic, to say the least, that at pages 8-9 of his Motion for New Trial, Defendant casts "snitch testimony" as inherently unreliable yet the entire basis of Defendant's Motion are the statements attributed to Benjamin Fuller, a cooperating defendant with his own motivations.

—

had been seized by police was to Tagupa.  (Government's Trial
Exhibit 1N1; attached as Exhibit F.)  A conversation shortly
after between Tagupa and Kaapuni revealed the only surprise to
Tagupa was that the methamphetamine had been seized by police
with Tagupa even offering to drive to the scene of the vehicle
stop to find out what was happening. (Government Trial Exhibit
1R1;(Attached as Exhibit G.) Less than two weeks later, Tagupa
was intercepted asking Kaapuni for his opinion as to whether
Tagupa should attempt to join the Maui Police Department so the
conspirators would have "somebody on da inside." (Government
Trial Exhibit 1X1; attached as Exhibit H.)

　　　Those intercepted calls coupled with Tagupa's
fingerprints found on the carton, tape and rubbish bag used to
conceal the methamphetamine provided overwhelming evidence of
Tagupa's guilt. Tagupa's testimony on his own behalf only further
cemented the jury's finding of guilt as they undoubtedly reached
the same conclusion as this Court which remanded Tagupa
immediately after he was convicted specifically finding that
Tagupa had repeatedly lied to the jury in his testimony.[6]

　　　Thus, there is zero reasonable probability that the
verdict against Tagupa would have been different even if the
assertions attributed to Fuller were true and introduced at

---

[6]　The Government expects that the defense will attempt to argue they would
not have called Tagupa to testify at trial and called Fuller as a witness
instead.  With Tagupa's lie-filled testimony in hindsight, that would, at
first, seem logical.  However, Tagupa had to testify in order to attempt to
explain away his own words intercepted over the Title III.  No testimony from
Fuller could have done that.

trial.  Thus, by definition, there can be no prejudice to Tagupa.
Accordingly, Defendant's Motion for New Trial should be denied
without any hearing.

## IV.

### CONCLUSION

Because on all of the above, the United States
respectfully requests that the United States' Motion to Strike be
granted and Defendant Tagupa's motion for new trial be denied
without hearing.

DATED: June 1, 2015, Honolulu, Hawaii.

Respectfully Submitted,

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii


By  /s/ Mark A. Inciong
    MARK A. INCIONG
    Assistant U.S. Attorney

    Attorneys for Plaintiff
    UNITED STATES OF AMERICA