FLORENCE T. NAKAKUNI     #2286
United States Attorney
District of Hawaii

MARK A. INCIONG   CA BAR #163443
Assistant U.S. Attorney
PJKK Federal Building, Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:    Mark.Inciong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00553 JMS |
| | ) | |
| Plaintiff, | ) | UNITED STATES OF AMERICA'S |
| | ) | SUPPLEMENTAL MEMORANDUM IN |
| vs. | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTION FOR NEW TRIAL; |
| JAMES TAGUPA,     (03) | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES OF AMERICA'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL**

COMES NOW the United States of America, by and through Florence T. Nakakuni, United States Attorney, and Mark A. Inciong, Assistant United States Attorney, and hereby files its supplemental memorandum in response to Defendant's above-referenced motion.  Said response is based upon the files and records of this case together with the attached memorandum of points and authorities.

**I.**

**TESIMONY AT THE JULY, 29, 2015 EVIDENTIARY HEARING**

Contrary to Defendant's assertions in his September 18, 2015 supplemental memorandum, the testimony at the July 29, 2015 evidentiary hearing did <u>not</u> establish that Benjamin Fuller ever made any statement, much less an exculpatory statement, to government agents regarding James Tagupa's knowledge or involvement in the charged conspiracy.  Rather, Fuller's testimony was entirely consistent with the declarations attached as Exhibits A and B to the Government's initial response in this matter.

At the July 29, 2015 hearing, this Court correctly concluded that the alleged conversation between Fuller and government agents referenced in the emails between Fuller and Tagupa's defense counsel (Defendant's Motion for New Trial, Exhibit A) "never happened."

Furthermore, Fuller admitted during cross-examination that Tagupa's mother, Francine Tagupa[1], was upset at the prospect of her son going to prison for ten years and in their March 22, 2015 telephone conversation, he simply told her "what she wanted to hear."  Francine Tagupa then relayed that "information" to Tagupa's attorney who contacted Fuller by email on April 15, 2015.

---

[1] The recording of the March 22, 2015 telephone conversation between Fuller and Francine Tagupa introduced into evidence at the hearing clearly established that Francine Tagupa was the instigator and creator of the alleged conversation between Fuller and government

II

**POINTS AND AUTHORITIES**

A. **Fuller never made any statement exculpatory to Tagupa to the Government and, even if he had, the evidence against Tagupa was overwhelming to the degree that confidence in the jury's guilty verdict would not have been undermined whatsoever if the alleged statement had been introduced at trial.**

Defendant cites to Comstock v. Humphries, 786 F.3d 701 (9th Cir. 2015) as being "on point" to the issue before this Court. Defendant's Supp. Memo. at page 3. While the Government agrees that Comstock maps out the Ninth Circuit's current state of the law in regard to prejudice and materiality within the Brady context, the instant facts and those of Comstock could not be further apart.

First, as indicated above, there was no statement made by Fuller for the Government to suppress here. In Comstock, the Ninth Circuit found, "the State has not disputed Comstock's contention that information was suppressed." Comstock, at 710.

Secondly, in Comstock, there was no evidence to contradict the alleged victim's assertion that he provided the exculpatory statement to the state prior to trial. Id., at 709. Here, all the evidence – the declarations of the Government agents and Fuller's own testimony at the evidentiary hearing - contradicts the defense claim of Fuller's statement.

Third, the Comstock prosecution rested entirely on the testimony of the alleged victim. Id. at 713. In this case, Fuller was not

agents.

part of the Government's case.

Most importantly, in Comstock, the alleged victim's suppressed statement "affirmatively cast serious doubt on whether there was a crime in the first place." Id. at 709. Here, there is no question that federal drug crimes were committed. The only question was who committed them.

Defendant claims that "Mr. Fuller and Mr. Kaapuni are, moreover, the only ones who knew about the drugs and are the only ones who could have told Mr. Tagupa about the drugs." Supp. Memo. at page 2. Evidence admitted at both the trial and the July 29, 2015 evidentiary hearing wholly contradict that assertion. At the trial, Government Exhibit 1-M was admitted and played for the jury. Defendant's Supp. Memo.; Exhibit B at pages 2-222 to 2-228. That exhibit was a recording of a telephone call placed by co-Defendant Keoni Duffy to co-Defendant Jon Hans Kaapuni, Jr. in which Duffy alerted Kaapuni that the Maui Police had seized the methamphetamine delivered by Tagupa to Duffy and placed in the truck in which Duffy was a passenger on August 21, 2012. The call left no doubt Duffy knew of the methamphetamine and could have informed Tagupa when they met at the boat ramp earlier the day.

At both the trial and the July 19, 2015 hearing, there was evidence that Tagupa picked up the package which contained the methamphetamine from "Des", or Desmond Morris. Tagupa's attorney himself cross-examined FBI Special Agent Rudow on this fact (Supp. Memo. Exhibit D at pages 4-109 to 4-110) and Fuller testified at

the evidentiary hearing that he had instructed Tagupa to meet "Des" behind the old mill in Lahaina to pick up the package.  Thus, "Des" could also have known of the methamphetamine and warned Tagupa to take appropriate precautions.  These are just two easy examples of others who knew or could have known about the drugs and told Tagupa of their presence.

More importantly; however, is that Defendant's argument on this point is wholly flawed as it appears Defendant believes that some other person must have told Tagupa of the presence of the methamphetamine (Supp. Memo at p. 2.) in order for Tagupa to be guilty.  Of course, there is no support in the law for that proposition whatsoever and Tagupa's knowledge of the methamphetamine was properly proven at trial beyond a reasonable doubt by circumstantial evidence.

Using that flawed logic, Tagupa makes a reach of epic proportion and claims that, "Testimony that one of the two people who could have told Mr. Tagupa about the drugs did *not* in fact tell him about the drugs, and had no knowledge that the other person had either, is undoubtedly direct, exculpatory evidence."  Id.  In addition to being factually incorrect, the statement, in essence, attempts to argue that a lack of knowledge by Fuller as to Tagupa's mens rea regarding the drugs equates to exculpatory evidence.  No case has ever held such a lack of knowledge by a witness or co-conspirator to be Brady material.

Tagupa confuses the "linchpin" of the Government's case against

5

him with the statutory elements of knowledge required by the crimes with which he was charged.  In Comstock, the "linchpin" of the State's case was the alleged theft victim's testimony.  Here, the "linchpin" of the prosecution's case was the Title III interceptions of Tagupa.

Tagupa's own damning words were what convicted him. Fuller's purported statement, even if it had been made, would have had no effect whatsoever on the impact to the jury of Tagupa's intercepted conversations.  The wire interceptions and the knowledge of the drugs implicit in them were implicit and undeniable.  On the other hand, any remote possibility of the jury finding a shred of veracity in Fuller's alleged statement would have been eliminated by Tagupa's intercepted conversations with Kaapuni.

Thus, even if introduced at trial, the statement Tagupa attempts to attribute to Fuller would not have "resulted in a markedly weaker case for the prosecution and a markedly stronger one for the defense." Comstock at 711 citing Kyles v. Whitley, 514 U.S. 419, 441, 115 S.Ct. 1555 (1995).  In fact, just the opposite would have occurred.

Immediately after the verdict, this Court found that Tagupa repeatedly lied to the jury in his testimony.  The jury, undoubtedly, reached the same conclusion.  Had the jury any doubt as to Tagupa's knowledge of the methamphetamine after hearing the intercepted conversations, it was surely vanquished by Tagupa's incredible testimony.

Thus, because the evidence against Tagupa was overwhelming, there is no reasonable probability of a different result or that

6

confidence in the guilty verdict would be undermined in the slightest degree.  Accordingly, even if Fuller had made the statement alleged by Defendant, it was neither material nor prejudicial to the Defendant.

**IV.**

**CONCLUSION**

Because the evidence established that Fuller never made an exculpatory statement to the Government and because the statement Defendant claims was made was not material or prejudicial in light of the wiretap evidence against him coupled with his own incredible testimony at trial, the United States respectfully requests that Defendant Tagupa's motion for new trial be denied.

DATED: October 9, 2015, Honolulu, Hawaii.

    Respectfully Submitted,

    FLORENCE T. NAKAKUNI
    United States Attorney
    District of Hawaii

    By  /s/ Mark A. Inciong
        MARK A. INCIONG
        Assistant U.S. Attorney

        Attorneys for Plaintiff
        UNITED STATES OF AMERICA

UNITED STATES v. JAMES TAGUPA
CR. No. 13-00553 JMS
"United States of America's Supplemental Memorandum
 in Opposition to Defendant's Motion for New Trial"